# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re

DEMAS WAI YAN, aka DENNIS YAN     No C 06-0508 VRW

        Debtor.                 Bankr Case No 04-33526
                                              Bankr Adv No 05-3257
_____

WEI SUEN                                   ORDER

        Plaintiff/Appellant

           v

DEMAS YAN, et al,

        Defendants/Appellees
_____/

       Plaintiff Wei Suen, as assignee of the claim of Dong Fu (also known as Tony Fu), appeals from a judgment entered by the United States Bankruptcy Court denying a claim for recovery of a share of profits specified under an agreement entered into between Fu and Defendant Demas Yan (also known as Dennis Yan).

       In the bankruptcy court's Amended Decision After Trial entered on March 3, 2006, the bankruptcy court characterized the Yan-Fu agreement as a "joint venture agreement" but determined that Suen as Fu's assignee could not recover Fu's share of

profits from the project that was the subject of the agreement or even recoup funds contributed to the venture. Specifically, the bankruptcy court determined that Fu, who was not then a licensed contractor, had acted as a contractor on the project and was therefore barred from recovery by California Business and Professions Code § 7031. After a careful review of the bankruptcy court's record and applicable law, the decision of the bankruptcy court is REVERSED and REMANDED for further proceedings consistent with this opinion.

**I**

**A**

This section summarizes the bankruptcy court's Amended Decision After Trial (Am Dec). Doc # 49 Ex 23.

Winky Wong owned a single-family residence at 663 Chenery Street in San Francisco (the "property"). In October 1999,[1] Yan, Fu and Wong entered into a written agreement to demolish the existing improvements to the property and build four condominium units. Wong was to supply the property in return for fifty percent of the proceeds from the sale of the units, while Yan and Fu were to pay for the cost of construction and together receive the remaining fifty percent of the proceeds.

\\

---

[1] The Amended Decision of the bankruptcy court (Doc # 49 Ex 23) gives this date as October 2000 (at 2:13). This not only makes no sense given that Wong sold the property in February 2000 but is not supported by record documents (e g, Trial Exhibit A is a Yan-Fu-Wong agreement dated October 25, 1999)(Doc # 49 Ex 10). Neither party's brief, however, calls attention to this error.

On February 2000, presumably before work on the project had begun, Yan purchased the property from Wong. On October 12, 2000, Wong, Fu and Yan canceled their three-party agreement. On October 18, 2000, Yan and Fu entered into a new written agreement (the "agreement"). The agreement's complete and exact wording is set forth below:

> Agreement/Contract
> This is intended to be a legally binding contract.
>
> This agreement is between Demas Yan and Dong Fu concerning over the project and ownership located in 663 Chenery Street, San Francisco, California
>
> The entire agreement is as follows:
>
> 1. Demas Yan will entitle to 75% ownership and Dong Fu will entitle to 25% ownership over the said property located in 663 Chenery Street, San Francisco.
>
> 2. Regarding the construction project, Demas will responsible for the initial $300,000 construction cost. Dong will responsible for the rest of the construction costs.
>
> 3. The said property is either up for sale or rent, the proceeds shall distribute according to the ownership percentage; however, Dong has complete right to decide whether to sell or to rent the property.
>
> 4. The ownership is transferable and can be assigned to any one by his own choice but only limit to his own ownership percentage.

Doc # 29 Ex 10. The document was signed by Yan and Fu, both signatures dated October 18, 2000.

The bankruptcy court's decision described the agreement at issue as a "joint-venture agreement" but provided no analysis describing how it concluded that the agreement should be so characterized. The Amended Decision described the parties' responsibilities under the agreement thusly: "Yan was to provide

3

the property and up to $300,000 of the costs of construction in return for 75 percent of the proceeds from the sale of the condominiums. Fu was to supervise construction and supply all additional costs of construction in return for 25 percent of the sale proceeds." Am Dec at 2:24-28. Fu was without a valid contractor's license throughout the entire construction period. (According to evidence in the record, Fu was formerly a licensed contractor, but was no longer. See, e g, Fu Testimony, July 26, 2005, RT 206-07 (Doc # 49).)

Construction on the property began in May 2001 and ended in August 2003. Yan eventually sold all four units by mid-2005 for a combined price of approximately $2.3 million.

Meanwhile, in November 2002, Yan executed a promissory note in favor of Stella Chen, Fu's sister, for $450,000 together with a deed of trust against the Chenery Street property as security for the note. Chen contended that the note represented a promise to repay a cash loan advanced to Yan by a relative of Fu who lived in Hong Kong. Am Dec at 3. Yan, however, contended that he received no cash loan and that the note was "the embodiment of Fu's interest under the Agreement" but was unenforceable under California law because it represented compensation for construction services by an unlicensed contractor. Id.

Fu at some point assigned his interest under the agreement to Suen. Suen sought a twenty-five percent share of the proceeds, but Yan contended that Fu's share under the agreement was in fact compensation for contracting services which could not be recovered by an unlicensed contractor. Id at 3.

4

1

Regarding the agreement, the bankruptcy court made the following findings of fact:

- the agreement was an agreement to establish a joint venture;
- Yan provided the entire consideration for the purchase of the fee interest in the property from Winky Wong in February 2000;
- Yan retained legal title to the property following the execution of the agreement;
- in February 2000, Fu had not yet performed his duties under the agreement;
- Fu was not a licensed contractor;
- Fu did not retain a general contractor;
- Fu supervised the construction himself using both a licensed electrical contractor and "employees."

Am Dec at 4-5.

2

The bankruptcy court's Amended Decision also included several findings that appear to be based on evidence extrinsic to the agreement but are not supported by findings describing such evidence:

- "Yan and Fu did not intend that Fu receive a present 25 percent ownership interest in the Property upon the execution of the [] Agreement" because Yan provided the whole consideration for the purchase from Wong and retained legal title thereafter;

\\

- "Yan and Fu intended that Fu would be responsible for executing the planned construction"; and
- the agreement "permitted Fu to hire a licensed general contractor and did not require Fu to act as a general contractor in executing the construction." Id at 4.
- Rather, "the parties intended that Fu would become an equitable owner of a 25 percent undivided interest in the Property only after he performed his obligations under that Agreement." Id.

3

Regarding the note, the bankruptcy court made the factual finding that the note did not represent Fu's interest in the agreement. Id at 9.

4

The bankruptcy court made the following conclusions of law relevant to this appeal:

By supervising the construction himself, Fu acted as a contractor. Because Fu did not have a contractor's license, he was not entitled to collect any compensation for work performed per California Business and Professions Code section 7031, which provides that "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action * * * in any court of this state for the collection of compensation for the performance of any act or contract where a license is required * * *" (West 2004). By seeking twenty-five percent of

\\

the sale proceeds, Fu was in essence seeking compensation for services for which a contractor's license was required. Id at 6.

Fu did not come within statutory exceptions that permit an owner to perform certain contracting work without a license because he was "not an owner at the time he performed the work in question." Id at 5. He was not an owner because, under the bankruptcy court's conclusion in part I A 2 above, Fu would not become an equitable owner until he had discharged his obligation to provide construction management services under the agreement. Fu was also barred from recovery because he failed to hire licensed subcontractors to "perform substantially all of the major tasks of construction." Id.

Section 7031 should be read broadly to preclude the court from awarding any payment for the work Fu performed. Id at 6. Epstein v Stahl, 176 Cal App 2d 53 (1959) does not apply because the property in Epstein "had not been offered for sale." Epstein, moreover, may "not be good law" due to legislative changes to Business & Professions Code § 7031. Id at 7.

Because Fu was unlicensed, Fu's assignee Suen was "entitled to recover no part of the proceeds of sale of the Property pursuant to the Joint-Venture Agreement." Id at 8.

Suen was, moreover, not entitled to alternative relief in the form of a refund of Fu's contributions because Fu did not itemize the value of the materials he provided and because California courts "have generally not apportioned the value provided by unlicensed contractors between services and materials, but rather have denied payment for materials supplied as well as for services performed." Id at 7.

7

**B**

Appellant filed a timely notice of appeal of the bankruptcy court's rulings. After lengthy delays in briefing and disputes about the record on appeal, the parties had a hearing on the merits on September 13, 2007, following which the court took the matter under submission.

**II**

The court has jurisdiction to hear this appeal under 28 USC § 158(a), which grants district courts jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court.

In reviewing a bankruptcy court's decision, a district court reviews findings of fact for clear error and conclusions of law de novo. In re Holm, 931 F2d 620, 622 (9th Cir 1991). Contract interpretation is a matter of law, reviewed de novo. In re Beverly Hills Bancorp, 649 F2d 1329, 1334 (9th Cir 1981). Statutory construction is also a matter of law, reviewed de novo. Trustees of Amalgamated Insurance Fund v Geltman Industries, Inc, 784 F2d 926, 929 (9th Cir 1986).

**III**

Appellant Suen presents two main issues on appeal: (1) the bankruptcy court misinterpreted the agreement by adding what he contends are additional terms to the contract, contrary to California's parol evidence rule; and (2) the bankruptcy court misconstrued § 7031 by finding that it operated to bar Fu from recovering under the agreement.

## A

Because the issues on this appeal hinge on the nature of the parties' agreement, the court first reviews the bankruptcy court's determination that the agreement established a joint venture.

The existence of a joint venture agreement is a question of fact determined by a preponderance of the evidence. Weiner v Fleischman, 53 Cal 3d 476, 482 (1991).

A joint venture or partnership may be established by oral agreement and joint venture agreements and partnerships regarding real property are not within the statute of frauds. Bates v Babcock, 95 Cal 479, 487 (1892); see also, Kaljian v Menezes, 36 Cal App 4th, 573, 583-86 (1995). A joint venture or partnership agreement requiring one or more partners to contribute a leasehold or title interest in real property while another partner contributes in a different manner to the venture may therefore be enforceable. James v Herbert, 149 Cal App 2d 741, 748 (1957).

The statute of frauds is not a defense to enforcement of an oral partnership agreement concerning real estate because the subject matter of the agreement is not title to property, but rather profits from the partnership enterprise. In Bates v Babcock, the California Supreme Court explained:

> The settlement of partnership accounts, and the conversion into money of the assets of the partnership, whether real or personal, and their division among the partners, has always been one of the functions of a court of equity, and that court never stops to inquire into the source of the title of such assets, or in whose name they are held.

95 Cal at 487.  A modern treatise on contracts is in accord:

> An apparent exception to a statutory requirement that contracts dealing with interests in real estate be in writing is often made in the case of oral agreements of partnership or joint venture * * *, which are valid even though the intention of the partners or joint venturer is only a right to such profits and capital as may be left on an accounting after payment of the firm or joint venture debts.

Richard A Lord, 9 Williston On Contracts § 25:17 at 601-03 (West 1999).

A joint venture is an undertaking by two or more persons jointly to carry out a single enterprise for profit. Weiner v Fleischman, 54 Cal 3rd at 482.  The distinction between a joint venture and a partnership is not "sharply drawn" for from a legal standpoint, both relationships are virtually the same so that "the courts freely apply partnership law to joint ventures when appropriate."  Id.  The law requires little formality in the creation of a partnership and the agreement is not invalid because it is indefinite as to details.  James v Herbert, 149 Cal App 2d at 748.  The parties may agree that all members shall participate in the profits and that only some of them shall bear the losses; also, the contributions of the respective parties need not be equal or of the same character.  Id.  The Uniform Partnership Act of 1994 provides, inter alia, that "[a] transfer, in whole or in part, of a partner's transferable interest in the partnership is permissible."  Cal Corp Code § 16503.

The bankruptcy court did not explain how it arrived at its finding that the agreement was a joint venture agreement. This finding, however, is consistent with the agreement's terms under the above-cited authorities and is not clear error.  The

agreement establishes an undertaking by two or more persons jointly to carry out a single enterprise for profit. It defines the parties' respective contributions and responsibilities and the distribution of profits from the enterprise, which in this case are varying and unequal. It provides for transfer and/or assignment of the ownership shares. These characteristics of the agreement are all consistent with California law concerning joint ventures. Accordingly, this court affirms the bankruptcy court's finding that the agreement is a joint venture agreement.

B

The court next turns to Suen's contention that the bankruptcy court erred in relying on parol evidence to interpret or vary the terms of the agreement. In particular, Suen focuses on the bankruptcy court's findings that the agreement imposed on Fu responsibilities that required a contractor's license under California law.

As noted previously, the bankruptcy court's Amended Decision contains findings about the agreement that appear to based on extrinsic evidence —— specifically, those described in part I A 2, supra. The court therefore takes it as established that the bankruptcy court relied on parol evidence to interpret or vary the terms of the agreement. The bankruptcy court, however, did not explain for what purpose it did so or specify the items of parol evidence on which it relied.

To evaluate whether the bankruptcy court's use of parol evidence was error, the court must consider whether the

\\

bankruptcy court had any proper purpose for the use of such evidence.

> The parol evidence rule is a rule of substantive law that is applicable in two situations. First, the rule applies to the interpretation of the terms of a written agreement and restricts the introduction of extrinsic evidence on the issue of the meaning of those terms. Second, the rule applies to restrict the introduction of extrinsic evidence to add to or alter the terms of an integrated written document.

Harry D Miller, 1 <u>Miller & Starr California Real Estate</u> § 1.60 at 159 (West 2000).

Section 1638 of the California Civil Code provides, under the heading "ascertainment of intention; language" that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity" (West 1985). The parol evidence rule, codified at § 1856 of the California Code of Civil Procedure, provides that terms "set forth in writing intended by the parties as a final expression of their agreement with respect to such terms * * * may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." § 1856(a)(West 2007). Parol evidence is admissible to explain or supplement an agreement with <u>consistent</u> additional terms (§ 1856(b)) and for various other purposes enumerated in the statute. A court may admit parol evidence to explain an extrinsic ambiguity (§ 1856(g)), but courts should not "strain to create an ambiguity where none exists." <u>Waller v Truck Insurance Exchange, Inc</u>, 11 Cal 4th 1 (1995). Parol evidence is inadmissible to vary or contradict a written agreement if the agreement is not ambiguous. <u>In re Bartolo's Estate</u>, 124 Cal App 2d 727 (1954).

12

The bankruptcy court's findings based on parol evidence in part I A 2 supra all concerned the parties' intent. Because these findings are inconsistent with the plain meaning of the contract and with the bankruptcy court's finding that the agreement was a joint venture agreement, this court must reverse those findings. The bankruptcy court incorrectly applied Code of Civil Procedure § 1856 and drew unwarranted legal conclusions from the extrinsic evidence. Given the agreement's reference to itself as "the entire agreement," moreover, a determination under § 1856(d) that the agreement was intended to be integrated appears warranted, so that parol evidence could not be used to find that the agreement contained additional terms not set forth in the written contract. This includes, of course, a requirement that Fu "would be responsible for executing the planned construction." Am Dec at 4. That requirement cannot be found in the agreement.

C

It was only by reading construction-management duties into the agreement that the bankruptcy court was able to adjudge Fu barred from recovery under Business & Professions Code § 7031. The court also disagrees with that legal conclusion.

Having carefully considered the arguments on both sides of this issue, the court concludes that Epstein v Stahl, 176 Cal App 2d 53 (1959), not § 7031, states the correct rule of decision for this issue. In Epstein, a joint venture by two brothers-in-law to redevelop apartment buildings resulted in one suing the other for an accounting of partnership profits. The defendant

tried to assert that both the joint venturers' lack of a contractor's license and the statute of frauds barred recovery. The court rejected both arguments and held that the suit could go forward.

The bankruptcy court suggested that Epstein "may * * * not be good law" due to subsequent legislative changes strengthening section 7031 and also distinguished it on grounds that the property in Epstein "had not been offered for sale." The legislature amended section 7031 in the years 1961 and 1965, but not in ways relevant to the decision in Epstein. In 1989, the legislature modified section 7031 to add the language "or recover in law or equity in any action" as follows:

> No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, <u>or recover in law or equity in any action</u>, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract.

Given that the legislature passed up two opportunities to overrule Epstein shortly after the decision was published, it is not plausible to conclude that legislature intended to do so in 1989. Epstein is still widely cited, if not for the specific point at issue (see, e g, 9 Williston On Contracts § 25.17 at 604 n 72; 1 Miller & Starr Real Estate § 1:70 at 226 n 13) and, without any definitive pronouncement of the California Supreme Court or the legislature, cannot be said to have been overruled.

Epstein, which is consistent with decades of California law governing joint ventures, requires reversal of the bankruptcy court's judgment. In addition, a common sense interpretation of

14

the agreement supports this conclusion. The agreement expressly allows transfer of the partnership interests. If construction responsibilities attended Fu's interest, it makes little sense to read the agreement to allow those responsibilities to be transferred entirely at Fu's discretion lest those responsibilities be committed to a transferee unable to discharge them adequately.

In light of these salient aspects of <u>Epstein</u> for purposes of this appeal and practical considerations, the distinction drawn by the bankruptcy court between the facts of <u>Epstein</u> and those of the present case is not material to the analysis. Suen is entitled to Fu's share of the joint venture's profits.

IV

For the reasons stated herein, the judgment of the bankruptcy court is REVERSED. Suen, as assignee, is entitled to Fu's share of the joint venture's proceeds. The precise amount cannot readily be determined from the parties' submissions or from a review of the trial record. This matter is therefore REMANDED to the bankruptcy court for such proceedings as are necessary to determine Fu's share under the agreement.

This order is STAYED pending completion of settlement proceedings before Magistrate Judge Edward Chen. The order of remand will take effect only in the event that Magistrate Judge

\\
\\
\\

1   Chen notifies the undersigned that, at the conclusion of
2   settlement proceedings, this matter has not settled.
3
4                                    IT IS SO ORDERED.
5
6
7                                    VAUGHN R WALKER
8                                    United States District Chief Judge