Pages 1 - 31

United States District Court

Northern District of California

Before The Honorable Vaughn R. Walker

```
Wei Suen, et al.,          )
                           )
          Plaintiff,       )
                           )
   vs.                     )          No. C06-508 VRW
                           )
Dong Xing Fu,              )
                           )
          Defendant.       )
_____)
```

San Francisco, California
Thursday, September 13, 2007

**Reporter's Transcript Of Proceedings**

**Appearances**:


For Plaintiff:          Spiegel Liao & Kagay, LLP
                        388 Market Street, Suite 900
                        San Francisco, California  94111
                   **By:  Charles M. Kagay, Esquire**



For Defendant:          Stromscheim & Associates
                        201 California Street, Suite 350
                        San Francisco, California  94111
                   **By:  Joanne Marie LaFreniere, Esquire**




*Reported By:        Sahar McVickar, RPR, CSR No. 12963*
*                    Official Reporter, U.S. District Court*
*                    For the Northern District of California*

(Computerized Transcription By Eclipse)

*Sahar McVickar, C.S.R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

1  **Thursday**, **September 13**, **2007**                    **2:30 p.m.**

2                           **P R O C E E D I N G S**

3              **THE CLERK:**  Calling our last matter, civil docket

4  06-508, Wei Suen versus Demas Wai Yan.

5              **MR. KAGAY:**  Good afternoon, Your Honor.

6              Charles Kagay for appellate, Wei Suen.

7              **MS. LAFRENIERE:**  Good afternoon.

8              Joanne LaFreniere on behalf of Janina Elder, the

9  trustee of the Demas Yan bankruptcy case.

10             **THE COURT:**  Good afternoon.

11             All right, well, what did bankruptcy Judge Carlson

12  do wrong here?

13             **MR. KAGAY:**  He misinterpreted the contract, which is

14  a question of law.

15             **THE COURT:**  And which contract are we talking about?

16             **MR. KAGAY:**  We are talking about the contract that

17  appears in the record as Exhibit D and various other places,

18  the one-page contract that is quoted in full in our brief, the

19  contract between Demas Yan and Dong Fu about their joint

20  venture, building something or developing a property and

21  selling it on Channery Street.

22             **THE COURT:**  That's that one-page contract.

23             **MR. KAGAY:**  That's correct.  That's the only

24  contract that was at issue with this part of the case.

25             **THE COURT:**  I beg your pardon?

1    **MR. KAGAY:**  That's the only contract that was at

2    issue with this part of the case.

3        **THE COURT:**  Right.  Well, that was as pithy as any

4    contract Professor Williston *(phonetic)* ever wrote, isn't it?

5        **MR. KAGAY:**  About as pithy as any I've seen in my

6    practice.

7        **THE COURT:**  Right.

8        **MR. KAGAY:**  I find that something of a relief.

9        The contract is very straightforward.  It says,

10   first of all, it's intended to be a legally-binding contract.

11   It says it's the entire agreement, the entire agreement is

12   stated as follows, it puts a responsibility on -- on Mr. Yan to

13   pay for permits, condo papers, and pay for initial $300,000 of

14   construction.

15       It puts an obligation on Mr. Fu to be responsible

16   for the rest of the construction costs.  It says at the end of

17   the development that Mr. Yan would be entitled to 75 percent of

18   the proceeds and Mr. Fu will be entitled to 25 percent of the

19   proceeds.

20       There isn't any question here about what happened

21   afterwards.  The property was developed.  Mr. Yan put in money.

22   Mr. Fu put in money.  Mr. Fu did something else, he also did

23   help oversee the construction work, but that's not something

24   that's contemplated by this contract, it's nowhere in the

25   contract.  When it came time to enforce the contract, now we

1  have Mr. Suen standing in Mr. Fu's shoes because he is an

2  assignee.  He wants to enforce the contract.

3          Yan resists on the ground of Business and

4  Professions Code 7031, which says that a person who is not a

5  licensed contractor may not enforce an obligation for which a

6  contractor's license is required.  But there isn't any

7  obligation here for which a contractor's license is required,

8  and so the contract should have been enforced.  Judge Carlson's

9  mistake was in finding other terms in the contract that you

10  can't find anywhere within its four corners.

11          **THE COURT:**  Where did he do that?  I've got his

12  decision right here.

13          **MR. KAGAY:**  Okay.  I'll call it up in front of me.

14  And I believe I'll find that on page four of the contract,

15  paragraph 7.

16          **THE COURT:**  Page four?

17          **MR. KAGAY:**  Not the contract, the decision.  Page

18  four of the decision, the amended decision after trial, page

19  four, paragraph seven.

20          **THE COURT:**  Um-hmm, I have it.

21          **MR. KAGAY:**  Yan and Fu intended that Fu would be

22  responsible for executing the plan construction.  Yan was to

23  receive 75 percent of the sales proceeds in return for

24  supplying the underlying real property and $300,000 toward the

25  cost of construction.  Fu was to receive 25 percent of the

1   proceeds in return for performing his executive duties and for

2   covering any additional costs of construction.

3           Well, the phrase "for performing his executive

4   duties" is something you can't find in that contract.

5           **THE COURT:**  Well, there is no question this was a

6   contract to construct a building at 663 Channery, wasn't it?

7   It was a construction contract.

8           **MR. KAGAY:**  No, it wasn't a construction contract.

9   No, it was a development contract.  These two people became

10  partners in developing a property, and that is what they wanted

11  to do, and that is what they did.  Both of them were supposed

12  to put money in for the construction.  And Mr. Fu did something

13  beyond what the joint venture agreement asked him to do.  And

14  arguably, maybe he could have come in and asked for some

15  payment for doing that, but he doesn't ask for payment for

16  doing that, he only asked for his share of what that joint

17  venture agreement gives him.  And he performed everything he

18  was supposed to do under that agreement.

19          And to say he is asking to be paid for doing

20  construction simply isn't true.  That isn't what the contract

21  gives him.  It is a joint venture contract that divides

22  proceeds of something that was done.

23          **THE COURT:**  Aren't you attempting to have form

24  triumph over substance here?  The substance here is of an

25  agreement between these parties to construct this building.

1   And the builder was an unlicensed contractor, and under

2   California law he is not entitled to recover, having failed to

3   obtain a license, as required by California law.

4          California has a very strict policy on this.  And

5   wasn't the bankruptcy judge simply implementing the clear

6   public policy of the State of California to deny recovery to a

7   contractor under those circumstances?

8          **MR. KAGAY:**  Well, that is certainly what his

9   intention was, but he was not dealing with a contractor under

10  the circumstances.  Mr. Suen, standing in for Mr. Fu, was

11  asking for a share of a joint venture.

12         And the obligation -- again, you say that we are

13  talking about form over substance, I'm talking about the -- the

14  actual contract itself.  I mean, you call it form, but I would

15  say it's an integrated contract.  And that prevails over side

16  agreements or other understandings or intentions, subjective

17  thoughts, all these things that might say, well, Mr. Fu was

18  going to be paid for doing construction.  That wasn't what he

19  was being paid for doing under the integrated contract.

20         I don't think the Court has the power to peel off

21  that layer of the integrated contract and say I know what they

22  were really thinking, they were really thinking that Mr. Fu was

23  going to be paid to be a contractor, because that isn't what is

24  on the face of the integrated contract.

25         Now, if that were the case, if somehow it were

1   possible to write that new clause into the integrated contract,

2   under the law, I don't believe it is, but if it were possible

3   to do that, then we would be in the area of the ***Epstein*** case.

4   The ***Epstein*** case reflects the law that has to do with the

5   partnership law or the joint venture law of the State of

6   California.

7       ***THE COURT:***  A rather queried decision, isn't it?

8       ***MR. KAGAY:***  Well, 1959.  I was alive then, so I

9   consider all decisions when I was alive as being modern law.

10  But that's brings in a pretty broad swath, I admit.  It has not

11  been overruled, distinguished, limited in any way by any

12  California decision.

13      ***THE COURT:***  Well, it was distinguished by

14  Judge Carlson.

15      ***MR. KAGAY:***  Well, in this case that's true, he

16  attempted to distinguish it.  The distinction he brought,

17  though, was that in this case the property was to be sold.  And

18  it's very clear on the face of the ***Epstein*** case that the

19  property was being developed to be sold also.  So, I mean, the

20  distinction that Judge Carlson brought to it was incorrect.

21      ***THE COURT:***  But didn't Judge Carlson say the

22  property was to be sold or rented?  What was --

23              **(Reviewing.)**

24      ***THE COURT:***  Well, he stated, first, "Since ***Epstein***

25  was decided in 1959, the legislature has strengthened the bar

1  against recovery by unlicensed contractors by restricting the

2  substantial compliance exception to Section 730" -- "7031."

3              **MR. KAGAY:**  Exactly.

4              **THE COURT:**  Really doesn't have any application

5  here.

6              **MR. KAGAY:**  No, because we are not relying on that

7  substantial compliance exception.

8              **THE COURT:**  "Secondly, the California Supreme Court

9  has since stated explicitly that the policy of discouraging

10 unlicensed contractors from offering services to pay takes

11 precedence over concerns regarding injustice between the

12 parties."

13             Now, that is a valid distinction, isn't it?

14             **MR. KAGAY:**  I don't think it is because that is not

15 the -- that is not the fundamental basis of the **_Epstein_**

16 decision.  The **_Epstein_** decision said this was inequitable.  It

17 didn't say that's the reason that the contract will be

18 enforced, it said the reason is that the joint venture was not

19 suing to enforce the contract.

20             **THE COURT:**  All right, anything further on any of

21 these issues, Counsel?

22             **MR. KAGAY:**  I don't think so.  I think I would refer

23 the Court to page 62 of the **_Epstein_** decision, where it explains

24 the rationale.  And I think you find the rationale applies

25 equally here.

```
 1              THE COURT:  Page what?

 2              MR. KAGAY:  Page 62.

 3              THE COURT:  Let's see, in which version?  I have

 4   the --

 5              MR. KAGAY:  That is in the Cal App. 2d version, 176,

 6   Cal App. 2d.

 7              THE COURT:  Okay, I can find it.

 8              MR. KAGAY:  If you have the Cal Reporter, I can

 9   probably get you the page for that.  I think that's page 149.

10              THE COURT:  I guess this is an old Cal Reporter,

11   before they started putting in the parallel cites, the parallel

12   page citations.

13              MR. KAGAY:  Page 149 of 1, Cal Reporter, or page 62

14   of 176, Cal App. 2d.

15              THE COURT:  All right, page 149.

16              And specifically, what provision?

17              MR. KAGAY:  There is a paragraph that begins, "The

18   facts at bar present a far stronger case for not permitting a

19   greedy and avaricious joint venturer to keep for himself all

20   the fruits of the venture."

21              THE COURT:  All right.

22              Was there -- was one of these parties in the

23   business of contracting?

24              MR. KAGAY:  I think both the parties had been in the

25   business of contracting.  At one time or another, both the
```

1   parties had contractor's licenses.

2         **THE COURT:**  I see.

3         **MR. KAGAY:**  There is a great deal of symmetry here.

4   The contract itself says Yan will put in money for construction

5   and Fu will put in money for construction.  Both of them, in

6   fact, at one time or another had contractor's licenses.  I

7   believe Yan had a contractor's license during the pendency of

8   the contract.

9         They were developing this property to make a profit,

10  and it was never said Mr. Fu -- I mean, it was never said in

11  terms of contract, and don't think it really said anywhere in

12  the record, Mr. Fu, you are being hired to be a contractor.

13  That just isn't what the story was.  The story was we have

14  agreed to develop this property, and we'll do what's necessary

15  to do it.  We are joint venturers.

16        A joint venturer, under contract law, is not paid

17  for doing his work, a joint venturer has a share of the profits

18  of the enterprise.  And that is a big difference.

19        **THE COURT:**  All right.

20        **MR. KAGAY:**  My final point that I would make is on a

21  different -- on a different tact, is that Mr. Fu was required

22  to do two things under the contract, which was -- he was

23  required to do one thing under the contract, put in money.

24  Under the contract as rewritten by Judge Carlson, he was

25  required to do two things, which is build a building and put in

1   money.   There is no argument that for putting in the money he

2   is forbidden by 7031 to have any sort of recovery.

3          And it's extremely unjust if he puts in $400,000 of

4   his own money for construction costs and Mr. Yan puts in

5   300,000 -- and I don't claim that those are established figures

6   because Judge Carlson didn't actually establish them, so I

7   should say if Mr. Fu put in "X" and Mr. Yan put in "Y" in terms

8   of money, putting entirely aside the construction of the

9   building, it's unfair that Mr. Yan gets to keep the money that

10   Mr. Fu put in.  Even if he doesn't have to pay Mr. Fu for doing

11   construction work, if that is the way the contract is to be

12   rewritten --

13        ***THE COURT:***  Well, but the policy of California is

14   that injustice is secondary to the public policy of the State

15   against allowing unlicensed contractors to recover.

16        ***MR. KAGAY:***  Agreed.

17        And --

18        ***THE COURT:***  Why doesn't that policy apply here?

19        ***MR. KAGAY:***  Because the policy of the State also is

20   while we'd be very strict about not paying for unlicensed

21   contract work, any other agreement that the person who is a

22   contractor has with the other party will still be enforced.

23          If Mr. Fu did something other that construction

24   work, if he put in money, not just construction work, but he

25   put in money, if he gave money to Mr. Yan, there is no reason

1   that he should not at least be able to get a reimbursement of

2   the money he put in.

3           ***THE COURT:***  All right.

4           ***MR. KAGAY:***  Because he is not trying to enforce an

5   act for which a contractor's license is required.  You don't --

6   there is no requirement to have a contractor's license to put

7   in money.

8           ***THE COURT:***  All right, or to recover under a joint

9   venture; that's your theory.

10          ***MR. KAGAY:***  Exactly.

11          ***THE COURT:***  All right.

12          ***MS. LAFRENIERE:***  Good afternoon, Your Honor.

13          ***THE COURT:***  Good afternoon.

14          ***MS. LAFRENIERE:***  I wanted to address a few of the

15  points that Counsel made.

16          And one -- one thing I wanted to start out with is

17  the standard of review.  And the fact is that there were

18  findings of facts made by Judge Carlson, and the find -- the

19  standard for review of findings of fact is clear error.

20          Now, the facts that Judge Carlson found that support

21  his interpretation of the contract, Mr. Suen says that he is

22  not, he is not -- he is not contesting or challenging any of

23  the Bankruptcy Court's findings of fact.

24          The Bankruptcy Court specifically found that Yan and

25  Fu intended that Fu would be responsible for executing the

1  planned construction.  The Bankruptcy Court found that the

2  joint venture agreement permitted Fu to hire a licensed

3  contractor or not, but, again, the Bankruptcy Court found that

4  he did not retain a general contractor but instead undertook to

5  do that himself.

6        These findings of facts should stand absent clear

7  error.  And they are amply supported in the record.  If the

8  Court wishes, I can direct --

9        **THE COURT:**  What is the support for that in the

10  record?

11        **MS. LAFRENIERE:**  First of all, in Mr. Yan's

12  testimony, in the transcript of proceedings on December 1st,

13  page 62, where Mr. Yan testifies that his --

14        **THE COURT:**  Page 62?

15        **MS. LAFRENIERE:**  Yes, Your Honor.  This is the

16  direct of Mr. Yan.

17        **THE COURT:**  This is testimony of --

18        **MS. LAFRENIERE:**  And this is Mr. Yan.

19        **THE COURT:**  Mr. Yan.

20        **MS. LAFRENIERE:**  Right.  That the contract was

21  really a construction contract.  And Tony's compensation was

22  that of a contractor.  This is at page 62 at 5 -- line 5

23  through 7.  And then flipping to page 65 and 66, he also

24  discusses his understanding.

25        Then I'd like to direct the Court's attention to the

1  testimony on November 30th, 2005, of Mr. Fu.  And on

2  cross-examination, Mr. Fu was asked -- this is on page 55.

3  This is the middle of the page beginning at about line 9.  He

4  was asked about his testimony at deposition where he said as

5  the joint -- I beg your pardon, this is not -- this was in the

6  pleadings.

7          *THE COURT:*  Keep your voice up, Counsel.

8          *MS. LAFRENIERE:*  I'm sorry.

9          Is that better?  Can you hear me now?

10          *THE COURT:*  A little better.

11          *MS. LAFRENIERE:*  Is that better?

12          *THE COURT:*  Yeah.

13          *MS. LAFRENIERE:*  Okay, we are on page 55 of the

14  testimony.  And on line 9 he is asked about his testimony at a

15  deposition where -- I'm sorry, I said it wrong again.

16          In his pleadings, where Mr. Fu made a statement

17  that, "As a joint owner with general contracting experience, I

18  also had the primary responsibility for hiring contractors and

19  purchasing building materials for the property."  And admits

20  that's a true statement.

21          Then later that same day, on page 57, during

22  deposition, Mr. Fu is asked about a statement he made during

23  deposition.  This is page 57, lines 18:  "And it was also the

24  agreement that I was building the general project."  Mr. Fu

25  says, "yes" -- "Yeah, I was the one, yes."

1          **THE COURT:**  Well, does any of that testimony make

2      any difference?

3          **MS. LAFRENIERE:**  Yes, it does, Your Honor,

4      because --

5          **THE COURT:**  The interpretation of the contract is a

6      matter of law, isn't it?

7          **MS. LAFRENIERE:**  The interpretation of a contract is

8      -- well, first of all, Mr. Suen is making the argument on

9      appeal that it was an integrated contract; this issue was not

10     raised below.  And all of this evidence was admitted into the

11     record to explain and interpret the contract and was not

12     objected to.

13          It is now too late on -- on appeal for -- for

14     evidence that has already been admitted and considered by the

15     Court to be objected to.  The time was at trial, it was not --

16     it has been admitted.

17          **THE COURT:**  But if this is a matter of law, the

18     admission of that testimony doesn't change things.

19          **MS. LAFRENIERE:**  Again, the problem is that when the

20     Court is reviewing the contract, the Court can hear evidence on

21     the interpretation of the contract.  And if the evidence is --

22     is helpful and is -- and the contract is reasonably susceptible

23     to that interpretation, then it's admissible.

24          And again, it was not --

25          **THE COURT:**  Is this contract reasonably susceptible

1    to the interpretation which you are putting on it?

2          **MS. LAFRENIERE:**  Certainly, because if you look at

3    the contract, you can see that the -- and this is the one-page

4    contract, again, Your Honor.

5          **THE COURT:**  That is, as your adversary pointed out,

6    is very refreshing.

7          **MS. LAFRENIERE:**  It's a lot fewer pages to flip

8    through.

9          **THE COURT:**  I beg your pardon?

10          **MS. LAFRENIERE:**  The -- when you look at the

11   contract, it considers that Mr. Yan is going to have 75 percent

12   ownership, and he is going to pay for -- he owns the property,

13   and he is going to be paying for the first $300,000 of

14   construction work.

15          **THE COURT:**  Right.

16          **MS. LAFRENIERE:**  So -- I'm sorry, should I wait for

17   the Court?

18          **THE COURT:**  No, go right ahead.

19          **MS. LAFRENIERE:**  Oh, okay.  Sorry.

20          And Mr. -- Mr. Fu, under the terms of this contract,

21   the only way that he is providing any consideration is -- is if

22   he is beginning to -- to vest the contract by performance.  And

23   there is no performance until the end of the contract,

24   otherwise.  It wouldn't make any sense.  It would fail for lack

25   of consideration.

1          And I would also like to point out that the -- the

2   appellee, in his -- in his pre-trial statement, which is in the

3   designated record at 7, and this is a joint pre-trial statement

4   with Wei Suen and Mr. Fu --

5          **THE COURT:**  Let's go back to that contract.

6          **MS. LAFRENIERE:**  I'm sorry?

7          **THE COURT:**  Is there anything in the contract which

8   obliges one party on the other to actually carry out the

9   construction?

10          Is there language in the contract, "X" will build,

11   "X" will construct, "X" will make?  Is there any language of

12   that kind in the -- in the contract?

13          **MS. LAFRENIERE:**  In the contract it talks about the

14   division of the proceeds and the timing of the obligations.

15          **THE COURT:**  Correct.

16          **MS. LAFRENIERE:**  And it is correct that it does not

17   state on this page that Mr. Fu is the party who is constructing

18   the building.

19          **THE COURT:**  Okay, it's simply a division of the

20   proceeds kind of contract or --

21          **MS. LAFRENIERE:**  Of a finished --

22          **THE COURT:**  Division of the -- an allocation of the

23   responsibility to pay for construction and then a division of

24   the proceeds in the event of a disposition of the property.

25          **MS. LAFRENIERE:**  The contract contemplates that once

1   the project is complete that the proceeds will be divided in a

2   certain way; that's correct.

3            **THE COURT:**   So, if so and so puts up so much money,

4   and when the project is completed the proceeds are going to be

5   divided in such and such a manner; that's all there is to it.

6            **MS. LAFRENIERE:**   And one can infer from the contract

7   that in order for that to happen the building has got to be

8   built.

9            **THE COURT:**   Is there anything that would foreclose

10  these parties from hiring some other contractor or some other

11  party to actually construct the building?

12           **MS. LAFRENIERE:**   On this piece of paper?   No.

13           **THE COURT:**   Okay, so that means this is not a

14  construction contract.

15           **MS. LAFRENIERE:**   When the -- when the Court took

16  evidence on the contract, everyone agreed, Mr. Fu, Mr. Yan and

17  Mr. Suen, that Mr. Fu was the one who was undertaking the

18  construction of the building.

19           **THE COURT:**   Ahh, but that is -- that may have been

20  their understanding, but that was not a product of this

21  particular contract, was it?

22           **MS. LAFRENIERE:**   One has to look at the

23  circumstances in which the contract was -- was entered into.

24           When you look at the circumstances, Mr. Fu had

25  already begun the permit process, designating himself as the

1   contractor.  So when this piece of paper was entered into,

2   Mr. Fu was already acting as a general contractor.  It doesn't

3   need to be stated in this contract.

4           ***THE COURT:***  Getting the permits is not the same as

5   actually building the building.

6           ***MS. LAFRENIERE:***  True, but when one gets a permit

7   that states that one's company that one is licensed for is

8   going to be doing the construction, then that would seem to go

9   a little bit beyond what the Court just suggested.

10          ***THE COURT:***  Well, where does the contract make that

11  provision?

12          ***MS. LAFRENIERE:***  The reason that -- I'm sorry, are

13  you asking -- are you asking about the one piece of paper, or

14  are you asking about the terms of the contract as the Court

15  found them?

16          ***THE COURT:***  This is the contract.

17          ***MS. LAFRENIERE:***  All right.

18          ***THE COURT:***  This is the contract, isn't it?

19          ***MS. LAFRENIERE:***  And in this contract, it is correct

20  that it does not state that Mr. Fu is a general contractor;

21  however -- I'm sorry.

22          ***THE COURT:***  Go ahead.

23          ***MS. LAFRENIERE:***  Yeah.

24          However, when the Court and the parties were

25  litigating the meaning of this contract, everyone agreed that

1   this contract was executed by Mr. Fu's construction of the --

2   of the building.

3           **THE COURT:**  Well, isn't any understanding between

4   the parties that Mr. Fu was to construct the building a product

5   of something other than this written contract that existed

6   between Mr. Yan and Mr. Fu?

7           **MS. LAFRENIERE:**  The fact that Mr. Fu chose to -- to

8   undertake his responsibilities arising from this contract by

9   engaging as an unlicensed contractor was Mr. Fu's choice.  And

10  his consideration for this contract could not come into being,

11  then, until he began the contract as the parties contemplated.

12  And -- I'm sorry, the contracting, as the parties contemplated.

13          The parties all understood that Mr. Fu was -- was

14  going to -- to supervise this project.  And the California

15  Construction Code and contract licensing statute, what Mr. Fu

16  did was -- falls precisely within the definition of what a

17  contractor is; hence, Mr. Fu required a license in order to be

18  able to recover under this contract.

19          **THE COURT:**  Under this contract.

20          **MS. LAFRENIERE:**  Yes, Your Honor.

21          **THE COURT:**  What about the **_Epstein_** case?  It's old,

22  but old law is usually good law.

23          **MS. LAFRENIERE:**  The **_Epstein_** contract --

24          **THE COURT:**  It hasn't been questioned in all these

25  years, nearly 50 years.

1          **MS. LAFRENIERE:**   _Epstein_ was decided before

2     California Business and Professions Code 73 -- 7031 was

3     amended.   It was actually amended several times, but the key

4     parts --

5          **THE COURT:**   Well, but the principle that unlicensed

6     contractors cannot recover for work that they do, that was a

7     principle of law that existed in 1960 or 1959 at the time of

8     the _Epstein_ case; was it not?

9          **MS. LAFRENIERE:**   But there is a huge difference in

10    what the statute now says, Your Honor, and also how the

11    California Supreme Court upholds the statute.   And the very

12    important difference is that the California Legislature added

13    in Section A that a contractor may not -- well, I'll just read

14    the whole thing.   "And except as provided in subsection (e),

15    no person engaged in the business or acting in the capacity of

16    a contractor may bring or may taken any action" -- and here is

17    the new part -- "or recover in law or equity in any action and

18    any court of this state," and then this is the existing law --

19    part of the statute, "for the collection of compensation for

20    the performance of any act or contract where a license is

21    required by this chapter without alleging that he was a

22    duly-licensed contractor at all times during the performance of

23    that act or contract" -- and again, this is the new part,

24    "regardless of the matters or the cause of action brought by

25    that person."   And then it continues.

1          That's a huge difference.  When ***Epstein*** was decided,

2    there were all kinds of loopholes that parties could present

3    where -- exceptions to the statute that parties could present.

4    This is pretty explicit, that somebody who is trying to recover

5    under a contract, and this is a contract, wherein they engaged

6    in unlicensed contracting they're barred, whether it's in law

7    or equity and regardless of the merits of the cause of action.

8    It's pretty tough.

9          **THE COURT:**  If you and I decide to joint venture the

10   construction of a building, we agree to put up money, both of

11   us in certain amounts, and we agree to divide the proceeds in

12   the event of the sale of that building or to divide the

13   proceeds of the operation of that building, in order to enforce

14   that contract, neither one of us needs to have a contractor's

15   residence, do we?

16          I assume you don't have a contractor's license.

17          **MS. LAFRENIERE:**  I do not; I assume the Court does

18   not, either.

19                    **(Laughter.)**

20          **THE COURT:**  Nor do I.  So we are on the same level

21   in that respect.

22          **MS. LAFRENIERE:**  If two parties decide to construct

23   a building -- I want to make sure I have the hypothetical --

24   and neither has a contracting license --

25          **THE COURT:**  Correct.

1    **MS. LAFRENIERE:**  Then, no, Your Honor, they can't

2  sue each other.

3    **THE COURT:**  They can't what?

4    **MS. LAFRENIERE:**  They cannot sue each other to

5  recover on the construction.

6    **THE COURT:**  But they can certainly sue on the joint

7  venture contract.  You and I contract as joint venturers to

8  build a building --

9    **MS. LAFRENIERE:**  Well --

10    **THE COURT:**  And we go out and hire one of the law

11  clerks to go out and do the carpentry work -- I can assure you

12  that would be a very good idea --

13                    **(Laughter.)**

14    **THE COURT:**  -- at least to the extent I were

15  involved -- and that contract under those circumstances would

16  be enforceable without regard to the fact that neither you nor

17  I have a contractor's license.

18    **MS. LAFRENIERE:**  Well, Your Honor, if a party is

19  suing on a joint venture agreement, there are several ways to

20  go about it.  One is to request an accounting, and another is

21  to sue in tort.  And the way this litigation has unfolded, it

22  doesn't look like joint venture litigation, it looks like

23  contracting litigation.

24        If you look at what Mr. -- at what Mr. Suen asks

25  for, he asks to enforce the contract, he asks for damages, then

1   he asks for something that doesn't even fall within a joint

2   venture, and that is for a refund.   It doesn't look like a

3   joint venture disagreement, Your Honor.

4           Also, I did want to draw the Court's attention to

5   the joint pre-trial statement, which is designated Item No. 7.

6   And as I mentioned to the Court, this is a joint one for

7   Wei Suen and Dong Fu.

8           On page three of that, the parties, Mr. Suen and

9   Mr. Fu, say -- this is at line 6:  "Although the agreement did

10  not specify this, the parties' expectation was that Fu would be

11  the primary overseer of the development and construction, since

12  Fu had been a licensed general contractor from October 12, 1993

13  up until the time that he filed for an inactivation of his

14  license in October of '99."  And then it does say, "but Yan was

15  also expected to participate as well."

16          It's clear that the parties always intend Mr. Fu to

17  be the general contractor on this -- on this half-page

18  contract.

19          **THE COURT:**  But there is nothing in the terms of

20  this agreement that is before us, the one page, the half-page

21  contract, that required either Mr. Yan or Mr. Fu to actually

22  build the building.

23          **MS. LAFRENIERE:**  But the only way that Mr. Fu could

24  perform and did -- well, let me say that a different way.

25          The only way that Mr. Fu -- the way that Mr. Fu did

1  perform was to engage in unlicensed contracting.

2          **THE COURT:**  No, Mr. Fu performed by putting up the

3  money.

4          **MS. LAFRENIERE:**  But that comes at the very, very

5  end.  And also, there is disputed evidence as to what he

6  actually did put up.  There is also disputed evidence about

7  whether or not the contract was in breach.

8          **THE COURT:**  A contractual provision --

9          **MS. LAFRENIERE:**  Mr. -- I'm sorry.

10          Sorry, Your Honor.

11          **THE COURT:**  Go ahead.

12          **MS. LAFRENIERE:**  I was going to say that Mr. Yan was

13  only obligated to put in $300,000.  He introduced evidence that

14  was not disputed that, in fact, he put in more.

15          So Mr. Fu was already in breach of the contract

16  because he -- before any -- any obligation for him to pay came

17  up.

18          **THE COURT:**  Very well.

19          Anything further before I turn for one last comment

20  briefly from appellant's counsel?

21          **MS. LAFRENIERE:**  I did want to correct a possible

22  misstatement, and that was that I believe it was stated that

23  Mr. Yan did not -- or, excuse me, that Mr. Yan had a

24  contracting license during the building of this project.

25  Mr. Yan did obtain a contracting license, but I believe it was

1   in 2002.  And under the general -- under the California

2   statute, you have to have a license for the entire time that

3   you're contracting, which is why Mr. Fu's license was important

4   to Mr. Yan in going forward under the contract.

5           **THE COURT:** Very well, Mr. --

6           Yes, sir?

7           **MR. KAGAY:** Your Honor, there was considerable

8   factual recitation in the preceding presentation, and I'm not

9   going to go into all that because I think that has a name, the

10  name is parole evidence, that's what it is.  And we are

11  operating under the Parole Evidence Rule.  It doesn't matter

12  whether parole evidence has been admitted --

13          **THE COURT:** In California I have to look at the

14  parole evidence, don't I, and then decide what the effect of

15  the parole evidence is on the contract and can vary the

16  contract to conform to the parole evidence.

17          Can I not do that under California law?

18          **MR. KAGAY:** I don't think you can do that, Your

19  Honor, as a general proposition.

20          **THE COURT:** California has kind of a peculiar parole

21  evidence rule, doesn't it?

22          **MR. KAGAY:** I honestly haven't compared it to other

23  states, so I'm not really sure.

24          **THE COURT:** Well --

25          **MR. KAGAY:** But my understanding is there are

certain exceptional circumstances where you can use parole to
vary the meaning of the contract, such as you can prove there
was some is sort of fraud. If there were evidence that Mr. Fu
sneaked in in the dark of night and rewrote the contract,
obviously, that would be a circumstance when parole would vary
the meaning of the conduct, that they had a special code
language between them that said one thing and meant another.
But there is no evidence that they were writing in a code here.
They wrote what they wrote.

In fact, the evidence at the trial is that Mr. Yan
wrote the contract, he was the drafter of the contract. As
such, it should be construed against him, if there were any
ambiguity, but there isn't any ambiguity.

Now, it was interesting, going beyond the evidence
being presented, there was a mention of the pre-trial
statement. And the pre-trial statement was agreed between the
two sides. And Ms. LaFreniere read it to the Court, and I can
read it again: "The agreement did not specify; thus, the
parties' expectation was Mr. Fu would be the primary overseer
of the development of construction." Again, subjective intent
outside the four corners of the contract.

**THE COURT:** Aren't you just arguing for a big, fat
exception to that principle of California law that an
unlicensed contractor cannot recover?

**MR. KAGAY:** I'm not asking for that at all. I'm

1   asking for recognition that what was agreed to by these parties

2   was that whatever happened, as long as the terms of the

3   contract were fulfilled, and they were fulfilled here, then

4   that money would be divided as shown in the contract.

5           But the point I wanted to make was -- that was

6   mentioned but kind of glossed over; in that same agreed

7   pre-trial statement, the concluding part was that Mr. Yan was

8   expected to participate as well; in other words, the

9   expectation was that both Mr. Fu and Mr. Yan would participate

10  in overseeing the construction.

11          Well, if Mr. Yan is not a licensed contractor, which

12  is what we have just been told, how is he getting to keep the

13  money?  If we were to go beyond this contract and to go into

14  the subjective intent of the parties afterwards, and the

15  argument is that anybody who participated in the construction

16  of the contract -- of the building but didn't have a license is

17  not entitled to money here, then Mr. Yan can't take Mr. Fu's

18  money, and Mr. Fu can't take Mr. Yan's money.

19          So I don't understand the argument here that we can

20  rewrite the contract in such a way that we can find a way to

21  punish Mr. Fu for doing something that has nothing to do with

22  the contract, it's not anywhere in the four square, and for him

23  just coming out and doing what he said he was going to do in

24  the contract and what Mr. Yan said he would get his share for

25  doing.

1    Ms. LaFreniere said this must have been for

2   construction because otherwise there wasn't any consideration

3   from Mr. Fu; it says right there, "Dong will be responsible for

4   the rest of the construction costs."  That is consideration,

5   and that is what it boils down to.

6    On the question of the *Epstein* case, there is an

7   amendment to the statute, but the amendment merely says that

8   not only can you not bring an action to recover, but you also

9   can't recover in an action for law or equity, which is to say

10   that even if you didn't bring an action, even if you brought a

11   cross-claim, even if you tried to bring some other sort of

12   action, you wouldn't be allowed to recover.

13    Ms. LaFreniere admitted here if this had been an

14   action for accounting or for tort, she seems to be saying it

15   would properly enforce the joint venture agreement and recovery

16   would be allowed.  If that's the circumstance, it's certainly

17   well known under California law that if the facts prove

18   something other than the cause of action that was pleaded, if

19   there is some problem pleading contract but not pleading

20   accounting or not pleading tort, then the complaint should be

21   amended to conform with the proof, and Mr. Suen should be

22   allowed to recover under accounting or recover under tort.

23    I don't think that's necessary.  I mean, we have a

24   contract here.  It's absolutely clear.  We have the parole

25   evidence rule that says you have to follow -- the case I cited

1  in my reply says there isn't an issue because the piece of

2  paper is the contract.  And if the piece of paper is the

3  contract, there isn't any question it was fulfilled.

4          **THE COURT:**  Well, Counsel you have done a fine job.

5  The only thing that I don't like about this case is that it

6  reminds me about some of the problems that you get on the Bar

7  exam.

8          **MR. KAGAY:**  That and your first year of law school.

9          **THE COURT:**  All right.  Thank you very much.

10         **MR. KAGAY:**  Thank you.

11              **(Proceedings adjourned at 3:45 p.m.)**

12

13

14                    **---o0o---**

15

16

17

18

19

20

21

22

23

24

25

### <u>CERTIFICATE OF REPORTER</u>

I, Sahar McVickar, Official Court Reporter for the
United States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by me, a
certified shorthand reporter, and were thereafter transcribed
under my direction into typewriting; that the foregoing is a
full, complete and true record of said proceedings as bound by
me at the time of filing.  The validity of the reporter's
certification of said transcript may be void upon disassembly
and/or removal from the court file.


_____
     **/s/ Sahar McVickar**

**Sahar McVickar, RPR, CSR No. 12963**

**May 16, 2008**